1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   NATHAN CLARK,                 )   Civil No. 10cv02149 AJB(RBB)
                                    )
12              Petitioner,         )   **REPORT AND RECOMMENDATION**
                                    )   **DENYING PETITION FOR WRIT OF**
13   v.                             )   **HABEAS CORPUS AND ORDER**
                                    )   **DENYING EVIDENTIARY HEARING**
14   L.S. MCEWEN,                   )   **[ECF NO. 1]**
                                    )
15              Respondent.         )
     _____)
16

17        Petitioner Nathan Clark, a state prisoner proceeding pro se

18   and in forma pauperis, filed a Petition for Writ of Habeas Corpus

19   on October 12, 2010, pursuant to 28 U.S.C. § 2254 [ECF Nos. 1, 3].[1]

20   Clark alleges that officials at Calipatria State Prison

21   ("Calipatria") issued three consecutive rules violations for the

22   same offense relating to job performance, which resulted in the

23   improper "stacking" of overlapping violations to enhance the

24   discipline.  (Pet. 6-9, ECF No. 1)  As a result, Clark was deprived

25   of a total of ninety days of good time and work credits — thirty

26   days for each violation.  (<u>Id.</u> at 7.)  Petitioner maintains that

27   _____

28        [1]  Because the Petition, Answer, and Traverse are not
     consecutively paginated, the Court will cite to them using the page
     numbers assigned by the electronic case filing system.

                                    1
                                                      10cv02149 AJB(RBB)

the sixty-day credit loss for the subsequent violations constitutes an "illegal sentence," in violation of his rights to due process and equal protection. (Id. at 6-8.)  Clark also requests an evidentiary hearing. (Id. at 1.)

On December 30, 2010, Respondent L.S. McEwen, warden, filed an Answer to Petition for Writ of Habeas Corpus as well as a Notice of Lodgment [ECF No. 6].  There, McEwen contends that the Court should deny federal habeas relief because Clark's claims are procedurally defaulted, and the Petition was not filed within the one-year statute of limitations prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). (Answer 6, ECF No. 6.) Alternatively, if the Court considers the Petition on its merits, Respondent contends that Clark fails to state a cognizable federal claim and does not allege a prima facie claim for relief. (Id.)

The Petitioner filed a Traverse along with exhibits on January 28, 2011 [ECF No. 7].  Clark insists that his claims are not procedurally defaulted, the Petition is not barred by AEDPA's one-year statute of limitations, and he sufficiently alleges a federal question and states a prima facie case. (Traverse 14-16, 21, ECF No. 7.)

The Court has reviewed the Petition, Respondent's Answer and lodgments, and the Traverse.  For the reasons discussed below, Clark's Petition should be **DENIED**.

## I.  FACTUAL BACKGROUND

Petitioner alleges that prison officials at Calipatria issued three consecutive rules violation reports relating to his job performance and imposed three separate credit forfeitures for the same offense, which is against the California Department of

Corrections and Rehabilitation ("CDCR") policy that prohibits "stacking." (Pet. 6-7, ECF No. 1.) Clark submits that he was employed as a "3rd watch program office porter," which is a paid position. (Id. at 13; Traverse 4, ECF No. 7.) On July 20, 2005, Petitioner was given a rules violation for failing to comply with section 3041(a) of the California Code of Regulations. (Pet. 7, 13, ECF No. 1.) He was specifically cited for ignoring his supervising officer's orders to perform on four different occasions. (Id. at 13.) In light of Clark's job performance on July 20, 2005, as well as his numerous other rules violations for job performance, the reporting officer requested that Petitioner be taken to "ICC" and removed from his job assignment. (Id.)

The next day, on July 21, 2005, Clark received a second rules violation, this one was for failing to report to work, in violation of section 3041(a). (Id. at 14.) The citing officer noted that Clark had received violations on February 6, and June 2, 2005, for the same conduct. (Id.) Once again, the correctional officer requested that Petitioner be taken to ICC and removed from his job assignment. (Id.)

The following day, July 22, 2005, Clark received the third rules violation, again, this one was for refusing to report for work, in violation of section 3041(a). (Id. at 15.) Correctional Officer Mejia noted that Clark had received violations on February 6, June 2, and June 21, 2005, for the same conduct. (Id.) Again, the correctional officer requested that Petitioner be taken to ICC and removed from his job assignment. (Id.)

On July 25, 2005, a hearing was held regarding the first rules violation issued on July 20, 2005, for Clark's refusal to perform

his job duties while at work.  (Lodgment No. 2, Rules Violation
Report 2, July 25, 2005.)  Although Petitioner pleaded not guilty,
he was ultimately found guilty of violating section 3041 for the
specific act of "performance," a division "F" offense.  (<u>Id.</u>)
Clark was assessed a thirty-day forfeiture of credits, reprimanded
about program expectations, and advised of future behavioral
expectations.  (<u>Id.</u> at 3.)

On August 9, 2005, a hearing was held for the second rules
violation issued on July 21, 2005, for Clark's refusal to report
for work.  (Lodgment No. 3, Rules Violation Report 4, Aug. 9,
2005.)  Petitioner pleaded guilty to the charge of violating
section 3041(a) due to his job "performance," as a division "F"
offense.  (<u>Id.</u>)  He was assessed a thirty-day forfeiture of
credits, including thirty days of forfeited phone, yard, and
dayroom access.  (<u>Id.</u>; <u>see</u> Pet. 7, ECF No. 1.)  Clark was also
counseled about program and behavioral expectations.  (Lodgment No.
3, Rules Violation Report 4.)  The Petitioner was also "referred to
UCC with recommendation for:  Removal from assignment and placement
[o]n C-STATUS:  For Program Failure Review."  (<u>Id.</u>)

Approximately ten minutes later on August 9, 2005, a
disciplinary hearing was held on the third rules violation issued
on July 22, 2005, also for Clark's failure to report to work.
(Lodgment No. 4, Rules Violation Report 2, Aug. 9, 2005.)  The
Petitioner pleaded guilty to violating section 3041(a) for his
"performance" and was assessed an additional thirty-day forfeiture
of credits as a division "F" offense; this included a thirty-day
loss of phone, yard, and dayroom access.  (<u>Id.</u>)  Clark was also
lectured about program expectations.  (<u>Id.</u>)

4

On January 10, 2010, nearly five years after the disciplinary hearings were held, Clark submitted an inmate grievance asserting that the sixty-day credit loss for the July 21 and 22, 2005 violations was the result of improper "stacking" for the same offense. (See Pet. 8, 28, ECF No. 1.)  This grievance was screened out as untimely on January 12, 2010, pursuant to section 3084.6(c) of the California Code of Regulations. (Id. at 27.)  The appeals coordinator indicated that if Petitioner would like to pursue the matter further, he must submit an explanation and supporting documentation describing why he did not or could not file his grievance in a timely manner. (Id.)

The Petitioner resubmitted the same grievance, received one week later, on January 20, 2010, along with an excuse for the more than four-year lapse between the 2005 hearing and his appeal. (Id. at 28, 32; see Traverse 9, ECF No. 7.)  Clark explained that he had been unaware of CDCR's policy against "stacking" until the time that he filed his initial grievance. (Pet. 32, ECF No. 1.)  He alleged that the hearing officer should have recognized the improper "stacking" and concluded that time bars do not apply to challenges of unauthorized sentences. (Id.)  Petitioner's appeal was screened out at the second level on January 20, 2010, as untimely. (Id. at 30.)  The appeals coordinator wrote, "Your response has been noted, however, your appeal remains untimely, and will not be accepted.  Please do not resubmit." (Id.)  Clark did not submit this claim to the third level of review.

//

//

//

5

## II.   PROCEDURAL BACKGROUND

On February 18, 2010, Clark filed a petition for writ of habeas corpus with the California Superior Court for the County of Imperial, alleging due process violations arising from prison officials' "stacking" of the three instances of rules violations. (Id. at 44.)  The court denied the petition on March 19, 2010, because it was untimely, and Clark failed to account for the significant delay in filing the state petition.  (Id. (citing In re Clark, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993)).)

Next, Clark filed a petition with the California Supreme Court, which was summarily denied on August 18, 2010.  (Id. at 42.) The court cited In re Robbins, 18 Cal. 4th 770, 780, 959 P.2d 311, 317, 77 Cal. Rptr. 2d 152, 159-60 (1998), and In re Dexter, 25 Cal. 3d 921, 603 P.2d 35, 160 Cal. Rptr. 118 (1979).  (Id.)

Clark filed this federal Petition on October 12, 2010 [ECF No. 1].

## III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. § 2244 (West 2006), applies to all federal habeas petitions filed after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

1  28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512

2  U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th

3  Cir. 1991).  Because Clark's Petition was filed on October 12,

4  2010, AEDPA applies to this case.  See Woodford, 538 U.S. at 204.

5      In 1996, Congress "worked substantial changes to the law of

6  habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

7  1997).  Amended § 2254(d) now reads:

8          An application for a writ of habeas corpus on behalf
           of a person in custody pursuant to the judgment of a
9          State court shall not be granted with respect to any
           claim that was adjudicated on the merits in State court
10         proceedings unless the adjudication of the claim
           --
11
           (1) resulted in a decision that was contrary
12         to, or involved an unreasonable application of,
           clearly established Federal law, as determined
13         by the Supreme Court of the United States; or

14         (2) resulted in a decision that was based on an
           unreasonable determination of the facts in
15         light of the evidence presented in the State
           court proceeding.
16
   28 U.S.C.A. § 2254(d) (West 2008).
17
       To present a cognizable federal habeas corpus claim, a state
18
   prisoner must allege that his conviction was obtained "in violation
19
   of the Constitution or laws or treaties of the United States."  28
20
   U.S.C. § 2254(a).  A petitioner must allege that the state court
21
   violated his federal constitutional rights.  Hernandez, 930 F.2d at
22
   719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt
23
   v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).
24
       A federal district court does "not sit as a 'super' state
25
   supreme court" with general supervisory authority over the proper
26
   application of state law.  Smith v. McCotter, 786 F.2d 697, 700
27
   (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780
28
   (1990) (holding that federal habeas courts must respect a state

                                 7

1  court's application of state law); <u>Jackson</u>, 921 F.2d at 885
2  (explaining that federal courts have no authority to review a
3  state's application of its law).  Federal courts may grant habeas
4  relief only to correct errors of federal constitutional magnitude.
5  <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989)
6  (stating that federal courts are not concerned with errors of state
7  law unless they rise to level of a constitutional violation).

8      The Supreme Court, in <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003),
9  stated that "AEDPA does not require a federal habeas court to adopt
10 any one methodology in deciding the only question that matters
11 under § 2254(d)(1) -- whether a state court decision is contrary
12 to, or involved an unreasonable application of, clearly established
13 Federal law." (<u>Id.</u> at 71) (citation omitted).  In other words, a
14 federal court is not required to review the state court decision <u>de</u>
15 <u>novo</u>.  (<u>Id.</u>)  Rather, a federal court can proceed directly to the
16 reasonableness analysis under § 2254(d)(1).  (<u>Id.</u>)

17     The "novelty" in § 2254(d)(1) is "the reference to 'Federal
18 law, as determined by the Supreme Court of the United States.'"
19 <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), <u>rev'd</u>
20 <u>on other grounds</u>, 521 U.S. 320 (1997).  Section 2254(d)(1)
21 "explicitly identifies only the Supreme Court as the font of
22 'clearly established' rules." (<u>Id.</u>)  "[A] state court decision may
23 not be overturned on habeas corpus review, for example, because of
24 a conflict with Ninth Circuit-based law." <u>Moore</u>, 108 F.3d at 264.
25 "[A] writ may issue only when the state court decision is 'contrary
26 to, or involved an unreasonable application of,' an authoritative
27 decision of the Supreme Court." (<u>Id.</u>) (citing <u>Childress v.</u>
28 <u>Johnson</u>, 103 F.3d 1221, 1225 (5th Cir. 1997); <u>Devin v. DeTella</u>, 101

8

1  F.3d 1206, 1208 (7th Cir. 1996); <u>Baylor v. Estelle</u>, 94 F.3d 1321,

2  1325 (9th Cir. 1996).)

3      Furthermore, with respect to the factual findings of the trial

4  court, AEDPA provides:

5          In a proceeding instituted by an application for a
   writ of habeas corpus by a person in custody pursuant to
6  the judgment of a State court, a determination of a
   factual issue made by a State court shall be presumed to
7  be correct.  The applicant shall have the burden of
   rebutting the presumption of correctness by clear and
8  convincing evidence.

9  28 U.S.C.A. § 2254(e)(1).

10                      **IV.  DISCUSSION**

11      In his Petition, Clark maintains that his second and third

12 rules violations should have been dismissed under the CDCR policy

13 against stacking.  (Pet. 6-9, ECF No. 1)  Petitioner concedes that

14 the thirty-day forfeiture of time and work credit was appropriate,

15 but he argues that the sixty-day credit loss that was imposed for

16 the second and third violations was "illegal" and violated his

17 rights to due process and equal protection.  (<u>Id.</u> at 6-8.)  He also

18 requests an evidentiary hearing.  (<u>Id.</u> at 1.)

19      Warden McEwen contends that Clark is not entitled to federal

20 habeas relief because his claims are procedurally defaulted and

21 untimely.  (Answer 6, ECF No. 6.)  Even if the Court considered the

22 Petition on its merits, Respondent alleges, it should be denied

23 because Clark has not stated a cognizable federal claim and does

24 not allege a prima facie claim.  (<u>Id.</u>)

25 **A.   <u>One-Year Statute of Limitations</u>**

26      The Respondent maintains that Clark's Petition is barred by

27 the one-year statute of limitations set forth in § 2244(d).  (<u>Id.</u>

28 at 8.)  The CDCR's administrative grievance procedures require that

inmates file a grievance within fifteen working days of the event giving rise to the complaint. (Id. at 9 (citing Cal. Code Regs. tit. 15, § 3084.6(c) (amended 2011)).)  Because Petitioner challenges the sanctions resulting from the disciplinary hearings on August 9, 2005, McEwen maintains that Clark learned about the loss of custody credits the same date of the hearings. (Id. at 8-9.)  For habeas petitions that challenge administrative decisions, AEDPA states that a petition must be filed within one year from the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking such review. (Id. at 8 (quoting 28 U.S.C. § 2244(d)(1)).)  Therefore, Respondent asserts that the statute of limitations for Clark's claim began to run on August 30, 2005, when the time to seek review expired, which was fifteen working days after he was advised of the loss of credits. (Id. at 9, n.7.)  The limitations period expired one year later on August 30, 2006. (Id. at 9.)  Thus, McEwen contends that Clark filed his federal Petition on October 12, 2010, or 1,499 days after the statute had run. (Id.)

In his Traverse, Petitioner insists that his claim is not barred by AEDPA's one-year statute of limitations because it challenges an "illegal sentence," and it is therefore not subject to the statute. (Traverse 15, ECF No. 7 (citation omitted).) Clark also maintains that he was diligent because once he learned of the newly discovered evidence from another inmate, he filed an administrative grievance. (See id.)

The statute of limitations for federal habeas corpus petitions is set forth in § 2244(d), which provides in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1).

It is appropriate to dismiss a federal petition for writ of habeas corpus with prejudice when it was not filed within the AEDPA's one-year statute of limitations.  Jiminez v. Rice, 276 F.3d 478, 483 (9th Cir. 2001).  Statute of limitations issues must be resolved before the merits of individual claims.  White v. Klitzkie, 281 F.3d 920, 921-22 (9th Cir. 2002).

**1.   Start Date**

AEDPA's one-year statute of limitations applies to habeas petitions challenging administrative decisions.  Mardesich v. Cate, 2012 U.S. App. LEXIS 3362, at *17 (9th Cir. Feb. 21, 2012); Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004); Redd v. McGrath, 343 F.3d 1077, 1080 n.4 (9th Cir. 2003).  Specifically, subsection (D) of § 2244(d)(1) governs petitions attacking administrative disciplinary rulings.  Mardesich, 2012 U.S. App. LEXIS 3362, at *18; Shelby, 391 F.3d at 1066 (quoting Redd, 343 F.3d at 1081-83).  In these cases, the statute of limitations begins to run on "the

11

1  date on which the factual predicate of the claim or claims

2  presented could have been discovered through the exercise of due

3  diligence."  28 U.S.C.A § 2244(d)(1)(D); <u>see</u> <u>Mardesich</u>, 2012 U.S.

4  App. LEXIS 3362, at *19; <u>Shelby</u>, 391 F.3d at 1066; <u>Redd</u>, 343 F.3d

5  at 1081-83.  The statute may be tolled under 28 U.S.C. §

6  2244(d)(2).

> 7  [T]he date of the "factual predicate" for [petitioner's]
> claim under § 2244(d)(1)(D) is not determined by asking
> 8  when [petitioner] satisfied AEDPA's exhaustion
> requirement; rather it is determined independently of the
> 9  exhaustion requirement by inquiring when [petitioner]
> could have learned of the factual basis for his claim
> 10  through the exercise of due diligence.

11  <u>Redd</u>, 343 F.3d at 1084.  "Time begins when the prisoner knows (or

12  through diligence could discover) the important facts, not when the

13  prisoner recognizes their legal significance." <u>Hasan v. Galaza</u>,

14  254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting <u>Owens v. Boyd</u>, 235

15  F.3d 356, 359 (7th Cir. 2000)).

16      Here, the disciplinary hearings for the July 21 and 22, 2005

17  rules violations took place on August 9, 2005.  (Lodgment No. 3,

18  Rules Violation Report 4; Lodgment No. 4, Rules Violation Report

19  2.)  The Petitioner did not file an administrative grievance

20  challenging the August 9, 2005 decisions until January 10, 2010,

21  nearly five years later, when Clark allegedly learned of the prison

22  policy against "stacking." (Pet. 8, 28, ECF No. 1.)  That

23  grievance was screened out as untimely on January 12, 2010,

24  pursuant to section 3084.6(c) of the California Code of

25  Regulations, although Clark was permitted to submit an explanation

26  and documentation describing the reason for the delay.  (<u>Id.</u> at

27  27.)  Clark resubmitted the same grievance with an attached excuse

28  for the delay, which was received by the appeals office on January

12

1  20, 2010.  (<u>Id.</u> at 28, 32.)  Petitioner's resubmitted appeal was
2  screened out again on January 20, 2010, as untimely, and Clark was
3  informed that he should not resubmit the appeal.  (<u>Id.</u> at 30.)

4       The Court must determine when the factual predicate for
5  Clark's improper stacking claim could have been discovered through
6  the exercise of due diligence.  28 U.S.C.A. § 2244(d)(1)(D).  In
7  cases where the petitioner timely submits an administrative appeal
8  challenging the disciplinary decision, the factual predicate is
9  usually the day that the administrative decision becomes final,
10 subject to the petitioner receiving proper notice.  <u>Shelby</u>, 391
11 F.3d at 1066 (holding that the statute of limitation did not begin
12 to run until the petitioner's administrative appeal had been
13 denied); <u>Redd</u>, 343 F.3d at 1084 (stating that the parole board's
14 denial of the inmate's administrative appeal was the "factual
15 predicate" that triggered the commencement of the limitations
16 period); <u>Bridges v. Adams</u>, No. S-08-2316 JAM GGH P, 2009 U.S. Dist.
17 LEXIS 16100, at *2-3 (E.D. Cal. Mar. 2, 2009); <u>Perez v. Sisto</u>, No.
18 S-07-0544 LKK DAD P, 2007 U.S. Dist. LEXIS 77509, at *10 (E.D. Cal.
19 Oct. 18, 2007).  The Ninth Circuit recently held, "As a general
20 rule, the state agency's denial of an administrative appeal is the
21 'factual predicate' for such habeas claims."  <u>Mardesich</u>, 2012 U.S.
22 App. LEXIS 3362, at *19 (footnote omitted).  There is no indication
23 that the petitioner in <u>Mardesich</u> did not timely submit his
24 administrative appeal.  <u>See</u> <u>id.</u> at *2-3, 23-24 (applying the rules
25 set forth in <u>Shelby</u> and <u>Redd</u>, which dealt with timely
26 administrative appeals).

27      Unlike the cases where the petitioner timely appealed the
28 parole board's decision, Clark did not timely appeal the two

13

disciplinary rulings that each imposed a thirty-day credit loss. Therefore, the inquiry is whether the one-year statute of limitations commenced on August 9, 2005, the date the disciplinary hearings were held and rulings were made, or January 20, 2010, the date Clark's administrative grievance was ultimately screened out as untimely.

The Ninth Circuit has not expressly addressed when the factual predicate for a claim could have been discovered if the petitioner did not timely submit a grievance challenging the administrative ruling. See Redd, 1084 n.11 (citing id. at 1081 n.6). Nonetheless, many courts have held that the factual predicate under this circumstance is the date that the administrative decision was issued. Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002) (finding that because the petitioner did not timely file a grievance after the administrative decision, the limitations period began to run on the date that the decision was made, not when the untimely appeal was ruled on); Edwards v. Small, No. 10CV918-JM(JMA), 2011 U.S. Dist. LEXIS 27448, at *6-7, 11-12 (S.D. Cal. Feb. 18, 2011) (stating that the limitations period commenced on the date of the disciplinary hearings because petitioner's grievance was ultimately screened out as untimely and was therefore never administratively reviewed); see also Duke v. Marshall, No. CV 09-05888-GHK(SH), 2010 U.S. Dist. LEXIS 50071, at *9-10 n.8 (C.D. Cal. Mar. 9, 2010) (filing superior court petition before administrative appeal became final); Hecker v. Hubbard, No. S-07-1511 FCD GGH P, 2008 U.S. Dist. LEXIS 76126, at *7-8 (E.D. Cal. Aug. 27, 2008) (using latest rejection date as "untimely" to trigger limitations); Strack v. Campbell, No. S-07-0580 RRB DAD P,

2007 U.S. Dist. LEXIS 93232, at *16-17 (E.D. Cal. Dec. 19, 2007)
(same); Somers v. Schwartz, No. S-05-1454 LKK DAD P, 2007 U.S.
Dist. LEXIS 74991, at *21-23 (E.D. Cal. Oct. 9, 2007) (holding that
petitioner timely appealed, so the date he received a screening
notice improperly dismissing his appeal as untimely triggered the
limitations period); but see Waiwaiole v. Kane, No. C 04-3790
SI(pr), 2005 U.S. Dist. LEXIS 10052, at *5 (N.D. Cal. May 9, 2005)
(acknowledging that the limitations period would have started on
the date that the parole decision became final because that was the
factual predicate for the habeas claim).

The disciplinary hearings Clark challenges were never
administratively reviewed.  See Edwards, 2011 U.S. Dist. LEXIS
27448, at *11-12.  The Petitioner knew that he was beig assessed a
sixty-day credit forfeiture for the two rules violations for
refusing to report to work on August 9, 2005, the date of the
hearings.  See Kimbrell, 311 F.3d at 364.  Although the timely
pendency of administrative grievance procedures would have tolled
the one-year limitations period, Clark did not file his first
grievance until nearly five years after the disciplinary hearings.
See id.  Petitioner discovered the factual predicate of his claims
arising from these two hearings on August 9, 2005, the date that
both hearings were held.  See Edwards, 2011 U.S. Dist. LEXIS 27448,
at *11.  AEDPA's statute of limitations therefore commenced on
August 30, 2005, and expired one year later on August 31, 2006.
See id.  Because Clark did not file a state habeas corpus petition
until February 18, 2010, his claim is untimely by more than three
years.

10cv02149 AJB(RBB)

The Petitioner is also not entitled to a delayed accrual date under § 2244(d)(1)(D).  Hasan, 254 F.3d at 1154 n.3 (discussing that the limitations period commences when the petitioner knows, or through diligence could discover, the important facts, not when the petitioner understands their legal import); Flanagan v. Johnson, 154 F.3d 196, 198-99 (5th Cir. 1998) (noting that § 2244(d)(1)(D) does not permit an extended delay while a prisoner gathers "every possible scrap of evidence" that could support his contentions); see also Waiwaiole, 2005 U.S. Dist. LEXIS 10052, at *8 n.2.  Clark knew on August 9, 2005, that he was being assessed a sixty-day forfeiture of credit on top of his initial thirty-day forfeiture, and he knew what had occurred during the two disciplinary hearings.  See Waiwaiole, 2005 U.S. Dist. LEXIS 10052, at *8 n.2.  The Petitioner's subsequent acquisition of information that was helpful to his claim does not justify a later start date of the limitations period.  Id.

### 2.  Statutory Tolling

McEwen asserts that Clark is not entitled to statutory tolling because he did not file his state habeas petitions until long after the statute of limitations had run.  (Answer 9, ECF No. 6.) According to Respondent, Petitioner delayed more than four years from the disciplinary hearings before filing his state habeas petition on February 18, 2010.  (Id. at 10.)  The state supreme court denied a subsequent habeas petition as untimely.  (Id.) Moreover, Clark's federal habeas petition was mailed to the Court on October 7, 2010, which is 1,499 days after the statute of limitation expired.  (Id.)  Petitioner does not address whether he is entitled to statutory tolling.

16

The statute of limitations under AEDPA is tolled during periods in which a "properly filed" habeas corpus petition is "pending" in the state court.  28 U.S.C.A. § 2244(d)(2).  The statute specifically provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  Id.; see also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005).  "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (explaining that typical filing requirements include all relevant time limits).

The interval between the disposition of one state petition and the filing of another may be tolled under "interval tolling." Carey v. Saffold, 536 U.S. 214, 223 (2002).  "[T]he AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'"  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting Barnett v. Lamaster, 167 F.3d 1321, 1323 (10th Cir. 1999)); see also Carey, 536 U.S. at 219-22. The statute of limitations is tolled from the time a petitioner's first state habeas petition is filed until state collateral review is concluded, but it is not tolled before the first state collateral challenge is filed.  Thorson v. Palmer, 479 F.3d 643, 646 (9th Cir. 2007) (citing Nino, 183 F.3d at 1006).

17

1    In this case, the disciplinary hearings in question took place

2   on August 9, 2005, and Clark did not file his habeas petition with

3   the superior court until February 18, 2010.  The petition was

4   therefore filed four and one-half years after the disciplinary

5   hearings on August 9, 2005, and three and one-half years after

6   AEDPA's one-year statute of limitations expired on August 31, 2006.

7   A subsequently filed petition for state collateral relief cannot

8   revive an expired statute of limitations.  <u>Pace</u>, 544 U.S. at 417;

9   <u>see also</u> <u>Jiminez v. Rice</u>, 276 F.3d at 482; <u>Green v. White</u>, 223 F.3d

10  1001, 1003 (9th Cir. 2000).  Therefore, the statute of limitations

11  for Clark was not tolled for the period between August 31, 2006,

12  the date the limitations period expired, and February 18, 2010, the

13  date the first state habeas petition was filed.  <u>See</u> <u>Pace</u>, 544 U.S.

14  at 417.

15      **3.   Equitable Tolling**

16      The Respondent also submits that Clark is not entitled to

17  equitable tolling.  (<u>See</u> Answer 10-12, ECF No. 6.)  McEwen concedes

18  that Petitioner appears to be arguing that equitable tolling

19  applies because California law allows courts to correct an

20  "unauthorized sentence" at any time.  (<u>Id.</u> at 11.)  According to

21  Respondent, this argument is misplaced because Clark is appealing

22  prison disciplinary action, not a criminal sentence.  (<u>Id.</u>)

23  Further, Petitioner provides no authority to support his contention

24  that state law trumps the federal statute of limitations.  (<u>Id.</u>)

25  McEwen challenges Clark's alternative argument that he was unaware

26  of the prison policy against "stacking" until he reviewed another

27  inmate's rules violation dated August 11, 2008.  (<u>Id.</u> at 11-12.)

28  Respondent argues that it is unclear when he reviewed this

1  violation, or why he waited until October 7, 2010, to file his

2  Petition.  (<u>Id.</u> at 12.)

3       Petitioner does not expressly argue that he is entitled to

4  equitable tolling or that any extraordinary circumstance precluded

5  his timely filing.  He does, however, repeatedly assert that he did

6  not know of the illegality of the disciplinary decisions until

7  December 2009 or January 2010, when another inmate informed him of

8  the policy.  (<u>Compare</u> Pet. 46, ECF No. 1 (indicating that he

9  learned of the illegality of stacking "[a]round January 2010"),

10  <u>with</u> Traverse 7, ECF No. 7 (stating that he was made aware of the

11  CDCR policy against stacking on December 3, 2009).)  Clark alleges

12  that another prisoner showed him the inmate's three similar rules

13  violations for job performance from August 2008, where the first

14  violation was adjudicated but the subsequent two were properly

15  dismissed pursuant to the prison's anti-stacking policy.  (Traverse

16  8, ECF No. 7.)  Petitioner maintains that there was a smaller gap

17  in time between the three violations in his case than in the other

18  inmate's.  (<u>Id.</u>)  Clark argues that after learning this, he

19  diligently pursued his claims through the state administrative

20  grievance process as well as the state courts.  (<u>Id.</u> at 14.)

21  Moreover, Petitioner asserts that his claim is not subject to

22  AEDPA's statute of limitations because he is challenging an illegal

23  sentence.  (<u>Id.</u> at 8, 15.)  The Petitioner cites three California

24  cases, <u>In re Birdwell</u>, 50 Cal. App. 4th 926, 930, 58 Cal. Rptr. 2d

25  244, 246 (1996), <u>In re Harris</u>, 5 Cal. 4th 813, 855 P.2d 391, 21

26  Cal. Rptr. 373 (1993), and <u>In re Ward</u>, 64 Cal. 2d 672, 414 P.2d

27  400, 51 Cal. Rptr. 272 (1966).

28

10cv02149 AJB(RBB)

1       Equitable tolling of the statute of limitations is appropriate

2   when the petitioner can show "(1) that he has been pursuing his

3   rights diligently, and (2) that some extraordinary circumstance

4   stood in his way." Holland v. Florida, __ U.S. __, __, 130 S. Ct.

5   2549, 2554 (2010); Pace, 544 U.S. at 418; see also Lawrence v.

6   Florida, 549 U.S. 327, 335 (2007); Rouse v. U.S. Dep't of State,

7   548 F.3d 871, 878-79 (9th Cir. 2008).  A petitioner is entitled to

8   equitable tolling of AEDPA's one-year statute of limitations where

9   "'extraordinary circumstances beyond a prisoner's control made it

10  impossible'" to file a timely petition.  Spitsyn v. Moore, 345 F.3d

11  796, 799 (9th Cir. 2003) (quoting Brambles v. Duncan, 330 F.3d

12  1197, 1202 (9th Cir. 2003)).

13      "'[T]he threshold necessary to trigger equitable tolling

14  [under AEDPA] is very high, lest the exceptions swallow the rule.'"

15  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting

16  United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000).

17  The failure to file a timely petition must be the result of

18  external forces, not the result of the petitioner's lack of

19  diligence.  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

20  "Determining whether equitable tolling is warranted is a

21  'fact-specific inquiry.'"  Spitsyn, 345 F.3d at 799 (quoting Frye

22  v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001)).

23      Clark argues that he was not aware of the CDCR policy against

24  stacking until another inmate informed him about it nearly five

25  years after the disciplinary actions at issue, at which time he

26  diligently submitted a grievance.  Yet, a lack of understanding of

27  the law does not constitute the extraordinary circumstances

28  required for equitable tolling.  Jones v. Turner, 2011 U.S. App.

1   LEXIS 19064, at *3 (9th Cir. Sept. 14, 2011); <u>Raspberry v. Garcia</u>,

2   448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack

3   of legal sophistication is not, by itself, and extraordinary

4   circumstance warranting equitable tolling."); <u>see Perez v. Adams</u>,

5   405 F. App'x 262, 263 (9th Cir. 2010) (finding that petitioner was

6   not entitled to equitable tolling due to his lack of legal

7   sophistication, his appellate counsel's abandonment of the case,

8   and other circumstances apparently out of his control); <u>Marsh v.</u>

9   <u>Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well

10  established that 'ignorance of the law, even for an incarcerated

11  pro se petitioner, generally does not excuse prompt filing.'").

12      Clark is not entitled to equitable tolling for his belated

13  awareness of CDCR's anti-stacking policy because he has not shown

14  that extraordinary circumstances beyond his control prevented him

15  from timely filing a petition.  See <u>Waiwaiole</u>, 2005 U.S. Dist.

16  LEXIS 10052, at *7-8 (discussing petitioner's claim that he did not

17  know of the illegality of the parole board's decision until much

18  later, and finding that the belated discovery was insufficient to

19  warrant equitable tolling).  Petitioner has not shown that he

20  exercised reasonable diligence in attempting to pursue

21  administrative or habeas relief after his disciplinary hearings.

22      Clark additionally argues that he can bring an illegal

23  sentence claim at any time.  (<u>See</u> Pet. 47-48, ECF No. 1; Traverse

24  15, ECF No. 7.)  The primary case he cites in support of the

25  proposition, however, is a California case addressing a state

26  habeas petition challenging a criminal conviction, whereas Clark is

27  bringing a federal habeas petition that challenges two disciplinary

28  actions.  See <u>In re Birdwell</u>, 50 Cal. App. 4th at 930, 58 Cal.

1  Rptr. 2d at 246.  In any event, federal courts routinely apply
2  AEDPA's statute of limitations to claims that a petitioner was
3  given an illegal sentence.  See Murphy v. Idaho, Case No. CV
4  07-230-C-MHW, 2008 U.S. Dist. LEXIS 52279, at *3-10 (D. Idaho July
5  7, 2008); Pena v. Slaughter, No. CV 05-138-BLG-RWA, 2006 U.S. Dist.
6  LEXIS 48739, at *9 (D. Mont. May 12, 2006); see also United States
7  v. Fiorillo, No. CR-94-427-JLQ, 2006 U. S. Dist. LEXIS 71332, at
8  *7, 29-32 (N.D. Cal. Sept. 26, 2006) (applying statute of
9  limitations to § 2255 petition).

10      For all of these reasons, Clark's petition is time barred by
11  AEDPA's one-year statute of limitations.  Neither statutory nor
12  equitable tolling apply to Petitioner's case.  Habeas relief should
13  be **DENIED** on this basis alone.

14  **B.   Procedural Default**

15      Even if Clark's Petition was not time barred, his claim is
16  procedurally barred.  The warden contends that the state superior
17  court and the state supreme court expressly relied on adequate and
18  independent state procedural grounds – timeliness and
19  administrative exhaustion – when denying Clark's habeas petitions.
20  (Answer 7, ECF No. 6.)  McEwen maintains that because Petitioner
21  failed to submit a timely petition and exhaust administrative
22  remedies, Clark is barred from seeking relief in federal court.
23  (Id. at 7-8.)

24      In response, Clark argues that his claims are not procedurally
25  defaulted because he properly presented all of his claims to the
26  necessary tribunals.  (Traverse 14, ECF No. 7.)  Petitioner alleges
27  that because he is challenging an illegal sentence, his claim can
28  never be untimely.  (Id.)  Just because the prison screened out his

22

grievance as untimely and the lower courts denied his state

petitions as untimely, it does not mean that he failed to exhaust

his remedies.  (Id.)  Clark maintains that his Petition is not

procedurally barred and should be considered on its merits.  (Id.

at 14-15.)

"A federal habeas court will not review a claim rejected by a

state court 'if the decision of [the state] court rests on a state

law ground that is independent of the federal question and adequate

to support the judgment.'"  Beard v. Kindler, 558 U.S. __, __, 130

S. Ct. 612, 614 (2009) (quoting Coleman v. Thompson, 501 U.S. 722,

729 (1991)).  A habeas petitioner who has failed to comply with a

state's procedural requirements for presenting federal claims has

deprived the state courts of an opportunity to address the claims.

Coleman, 501 U.S. at 732 (citing 28 U.S.C.A. § 2254(b); Engle v.

Issac, 456 U.S. 107, 125-26, n.28 (1982)).  "In order to constitute

adequate and independent grounds sufficient to support a finding of

procedural default, a state rule must be clear, consistently

applied, and well-established at the time of the petitioner's

purported default."  Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir.

1994) (citing Ford v. Georgia, 498 U.S. 411, 424 (1991)).

The respondent has the burden of pleading an adequate and

independent procedural bar as an affirmative defense in a habeas

case.  See Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).

The burden of proof shifts to the petitioner to place that defense

in issue; the burden then shifts back to the respondent to prove

the bar is applicable.  See id. at 586.  "[A]bsent showings of

'cause' and 'prejudice,' federal habeas relief will be unavailable

when (1) 'a state court [has] declined to address a prisoner's

1   federal claims because the prisoner had failed to meet a state

2   procedural requirement,' and (2) 'the state judgment rests on

3   independent and adequate state procedural grounds.'"   <u>Walker v.</u>

4   <u>Martin</u>, __ U.S. __, __, 131 S. Ct. 1120, 1127 (2011) (citations

5   omitted) (alteration in original).

6       A federal habeas court looks to the last reasoned state court

7   opinion to determine whether a petitioner's claim is procedurally

8   barred.   <u>Vansickel v. White</u>, 166 F.3d 953, 957 (9th Cir. 1999)

9   (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).   Here, the

10  superior court denied Clark's habeas petition on March 19, 2010,

11  because it was untimely and failed to account for the significant

12  delay in filing.   (Pet. 44, ECF No. 1 (citing <u>In re Clark</u>, 5 Cal.

13  4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509).)   He did not seek

14  habeas relief from the California Court of Appeal; instead, he

15  filed a habeas petition with the state supreme court.   It summarily

16  denied Clark's petition on August 18, 2010, citing cases indicating

17  that the bases for the denial were untimeliness and non-exhaustion.

18  (<u>Id.</u> at 42 (citing <u>In re Robbins</u>, 18 Cal. 4th at 780, 959 P.2d at

19  317, 77 Cal. Rptr. 2d at 159-60; <u>In re Dexter</u>, 25 Cal. 3d 921, 603

20  P.2d 35, 160 Cal. Rptr. 118).)   Because the supreme court denied

21  the petitioner on state procedural grounds of timeliness and

22  exhaustion, Clark's federal claims are barred if either the

23  timeliness or exhaustion rule is adequate and independent.

24      **1.  Timeliness**

25          **a.  Independence**

26      A state procedural rule is independent when the "state law

27  basis for the decision [is] not . . . interwoven with federal law."

28  <u>La Crosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001) (footnote

omitted); see Harris v. Reed, 489 U.S. 255, 265 (1989).  A state law basis is interwoven with federal law when "'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'"  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

In 1998, the California Supreme Court made it clear that California's timeliness rule was independent of federal law.  See Bennett, 322 F.3d at 581-83; see also Townsend v. Knowles, 562 F.3d 1200, 1206-07 (9th Cir. 2009), abrogated on other grounds by Walker, __ U.S. __, 131 S. Ct. 1120.  Accordingly, when the California Supreme Court summarily denied Clark's petition in 2010 citing In re Robbins, it did so on an independent procedural ground.

**b.  Adequacy**

"To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"  Walker, __ U.S. at __, 131 S. Ct. at 1127-28 (quoting Kindler, 558 U.S. at __, 130 S. Ct. at 612) (footnote omitted); see Hanson v. Mahoney, 433 F.3d 1107, 1112-13 (9th Cir. 2006).  Prior to the Supreme Court's decision in Walker, the California timeliness rule, although independent, was not an adequate state ground to bar federal habeas relief.  Townsend, 562 F.3d at 1208.  In light of Walker, the law is clear that California's time bar is both adequate and independent.

The Supreme Court recently held that the timeliness requirement set forth in In re Robbins, the case cited by the state

supreme court when denying Clark's petition as untimely, is an adequate and independent state law ground to support a procedural default. See Walker, __ U.S. at __, 131 S. Ct. at 1124, 1130-31. Since then, the Ninth Circuit has applied Walker to pending cases and held that "denial of habeas relief by the California Supreme Court on the ground that the application for relief was filed untimely was an independent and adequate state procedural ground requiring denial of a subsequent habeas petition in federal court . . . ." Alvarez v. Wong, No. 09-15547, 2011 U.S. App. LEXIS 6976, at *2 (9th Cir. Apr. 5, 2011); see Haynes v. Haviland, No. 08-17755, 2011 U.S. App. LEXIS 11607, at *1-2 (9th Cir. June 7, 2011) (same); see also Martinez v. McGrath, No. CIV S-02-0159 KJM GGH P, 2011 U.S. Dist. LEXIS 23664, *8 (E.D. Cal. Mar. 9, 2011)(applying Walker).

The California courts signal that a habeas petition is untimely by citing the controlling cases, such as In re Clark, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993) and In re Robbins. See Walker, __ U.S. at __, 131 S. Ct. at 1124. The three leading decisions outlining California's time bar are In re Robbins, In re Gallego, 18 Cal. 4th 825, 959 P.2d 290, 77 Cal. Rptr. 2d 132 (1998), and In re Clark. See Walker, __ U.S. at __, 131 S. Ct. at 1125. "Those decisions instruct habeas petitioners to 'alleg[e] with specificity' the absence of substantial delay, good cause for delay, or eligibility for one of four exceptions to the time bar." Id. at 1128 (citations omitted).

Although Clark's charges became final in August 2005, when the disciplinary hearings took place, he did not file his state habeas petition in superior court until February 2010, and his subsequent

26

petition was not denied by the supreme court with a citation to In re Robbins.  California courts were regularly applying the time bar long before Clark should have raised his claim with the California courts.  At the time Petitioner filed his first habeas petition with the superior court in 2010 and the supreme court denied his petition that same year, the timeliness rule had been consistently applied by state courts.  See Martinez, 2011 U.S. Dist. LEXIS 23664, at *9, 9 n.4 (construing Walker as finding the timeliness bar an adequate and independent state ground since 2002).

The petitioner in Walker filed a habeas petition in the California Supreme Court in March 2002, and it was denied in September 2002.  Walker, __ U.S. at __, 131 S. Ct. at 1126.  The Supreme Court examined California's time bar in 2002 and proximate years and concluded that as of that time, the rule was consistently applied.  Id., __ U.S. at __, 131 S. Ct. at 1131; see also Martinez, 2011 U.S. Dist. LEXIS 23664, at *11 (finding no change in the time bar from 2002 to 2004).  The timeliness rule was therefore both independent and adequate at the time of Clark's default.  See Cox v. Small, 2011 U.S. App. LEXIS 25695, at *2 (9th Cir. Dec. 19, 2011).

Accordingly, the Petitioner is procedurally barred from raising this claim in federal court because California's timeliness rule is an adequate and independent state doctrine.

### c.  Cause and prejudice

A habeas petitioner who has failed to comply with a state rule must establish cause and prejudice in order to obtain habeas relief under federal law.  Review of a petitioner's claim is precluded unless he "can demonstrate cause for the default and actual

1  prejudice as a result of the alleged violation of federal law, or

2  demonstrate that failure to consider the claim[] will result in a

3  fundamental miscarriage of justice." Coleman, 501 U.S. at 749-50

4  (citing Murray v. Carrier, 477 U.S. 478, 485 (1986)); see also High

5  v. Ignacio, 408 F.3d 585, 590 (9th Cir. 2005). "[C]ause for a

6  procedural default on appeal ordinarily requires a showing of some

7  external impediment preventing counsel from constructing or raising

8  the claim." Murray, 477 U.S. at 492; see McCleskey v. Zant, 499

9  U.S. 467, 493 (1991) (discussing cause under abuse of writ

10 doctrine); see also Coleman, 501 U.S. at 753.

11     Clark argues that his Petition is not procedurally barred

12 because he is challenging an illegal sentence, which can be

13 reviewed at any time.  First, the sixty-day credit forfeiture is

14 not equivalent to a sentence imposed after a criminal conviction.

15 Second, Clark has not established that actual prejudice will result

16 from a constitutional violation or that the failure to consider his

17 claim on the merits will result in the fundamental miscarriage of

18 justice.  See Edwards, 2011 U.S. Dist. LEXIS 27448, at *28.  The

19 Petitioner has not met his burden of showing that the cause and

20 prejudice exception should apply, and habeas relief should be

21 **DENIED** for this additional reason.  See Coleman, 501 U.S. at 750.

22 **C.    Evidentiary Hearing**

23     Finally, Clark requests an evidentiary hearing.  (Pet. 1, ECF

24 No. 1.)  He does not present any facts that would warrant an

25 evidentiary hearing.  See Insyxiengmay v. Morgan, 403 F.3d 657, 670

26 (9th Cir. 2005) (stating that the petitioner must demonstrate he

27 failed to develop the factual basis of his claims in state court);

28 Townsend v. Sain, 372 U.S. 293, 313 (1963) (requiring the

1  petitioner to establish that one of the six factors applies to his

2  case).  Clark's request for an evidentiary hearing is therefore

3  **DENIED**.

**V.   CONCLUSION**

5      For the reasons set forth above, Clark did not file his

6  federal Petition within AEDPA's one-year statute of limitations.

7  The Petitioner is not entitled to a later start date or tolling.

8  Additionally, Clark is procedurally barred from brining his claim,

9  and he has not established that the cause and prejudice exception

10 applies to his case.  Clark's Petition for Writ of Habeas Corpus

11 should be **DENIED**.  The request for an evidentiary hearing is

12 **DENIED**.

13     This Report and Recommendation will be submitted to United

14 States District Court Judge Anthony J. Battaglia, pursuant to the

15 provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

16 objections with the court and serve a copy on all parties on or

17 before March 26, 2012.  The document should be captioned,

18 "Objections to Report and Recommendation."  Any reply to the

19 objections shall be served and filed on or before April 9, 2012.

20 The parties are advised that failure to file objections within the

21 specified time may waive the right to appeal the district court's

22 order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

24 Dated:  February 28, 2012

_RUBEN B. BROOKS_
RUBEN B. BROOKS
United States Magistrate Judge

25
26 cc:  Judge Battaglia
        All parties of record

29

10cv02149 AJB(RBB)